IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| RICARDO LOPEZ, § <br> PLAINTIFF § <br> § <br> V. § <br> § <br> § <br> AQUA FINANCE, INC, CONNEXUS CREDIT § <br> UNION, AND ENERFUZE LLC DBA § <br> ENERFUZE WATER TECHNOLOGIES § <br> DEFENDANTS § <br> § | PLAINTIFFS' ORIGINAL COMPLAINT <br><br> AND <br><br> JURY DEMAND <br><br> Case No: 5:20-cv-2018 |

I. INTRODUCTION

This complaint is brought by a disabled resident of San Antonio who was tricked by a traveling salesman to purchase, at an inflated price, a water treatment system for his home. The salesperson told Mr. Lopez that the water softener and filter would be paid for by his company, Enerfuze Water Technologies (hereinafter "Enerfuze") if Mr. Lopez put advertising in his front yard.

Mr. Lopez never told Mr. Lopez that he was sending in a credit application for a loan from Aquafinance, Inc. and Connexus Credit Union (the "lender defendants").

The salesperson performed misleading water treatment tests that showed sediment in the tap water and promised greater safety and better taste in water while still saving money. He even told Mr. Lopez that the filter would "oxygenate" the water, making it healthier for his diabetes.

AquaFinance, Inc, and Connexus Credit Union  provided the financing for

these purchases, and it is only with their support of Enerfuze's sales that the consumers could ever be sold the treatment systems. Without the complicity of the lender defendants, Enerfuze could never be successful in their schemes of targeting senior citizens with false promises of safety and saving money.

Plaintiffs bring claims against Defendants Aquafinance, Inc., Connexus Credit Union, Enerfuze LLC dba Enerfuze Water Technoligies for fraud, breach of the federal truth in lending law, deceptive trade practices, and RICO.

## II.   Parties

1. Plaintiff Ricardo Lopez is a resident of San Antonio, Texas in Bexar County.
2. Defendant Aqua Finance, Inc., is a foreign corporation with its principle place of business at One Corporate Drive, Suite 300, Wausau, WI 54401. Aqua Finance, Inc's registered agent is Corporation Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701.
3. Defendant Connexus Credit Union is a foreign financial institution with its principal place of business at 2600 Pine Ridge Blvd, Wausau, Wisconsin 54401.
4. Defendant Enerfuze LLC dba Enerfuze Water Technologies is a limited liability company with its principal place of business at 18756 Stone Oak Parkway, #200, San Antonio, Texas. Their registered agent, Paul Chancey, can be served at the same address.
5. Whenever it is alleged that a named "Defendant" did any act or thing or failed to do any act or thing, it is meant that the directors, managers, administrators, officers, agents, staff members, or employees of that defendant, performed, participated in, or failed to perform those acts

while in the course and scope of their employment or agency relationship with the named defendant, and, the named defendant is therefore liable under the theory of *respondeat superior*, vicarious liability, or general agency principles.

## II.   JURISDICTION AND VENUE

6. Jurisdiction in this court is proper pursuant to 15 U.S.C. § 1640(Truth in Lending Act) and 18 U.S.C. § 1964 (RICO). Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.
7. This court has jurisdiction over Enerfuze LLC dba Enerfuze Water Technologies because it is a Texas limited liability corporation that regularly conducts business in this state.
8. This court has jurisdiction over the lenders AquaFinance, Inc., and Connexus Credit Union as they all conduct business in this state by lending money to Texas residents in Texas.
9. Venue in this court is proper under 18 U.S.C. § 1964, because the Plaintiff resides in Bexar County, Texas, and the claims involve a transaction that occurred in this district.

## III.   FACTS

**Aquafinance, Inc. and Connexus credit union built a profit model based on predatory lending and business partnerships with unscrupulous home improvement companies**

10. Defendant AquaFinance began its history as a company dedicated to providing lending opportunities for small contractors, thus enabling smaller businesses to not lose out on the opportunity to do business with those who needed to finance their work.

11. AquaFinance has a history of relationships with companies that use underhanded and deceptive sales practices to sell vulnerable customers overpriced items such as solar panels, roof coatings, and water treatments.

12. AquaFinance does not perform much, if any, due diligence on the companies in which it engages in business. Numerous of their business relationships are with companies such as Enerfuze that build in huge profit margins on their sales, push loans for each sale, and then do not allow their clients to review or even receive the loan terms.

13. Enerfuze had multiple signs of predatory practices that would be easy to discover with minimal due diligence. These include but were not limited to:
    a. Salespersons are paid on a contingency basis;
    b. Websites and advertising boast about unsubstantiated health benefits of "alkaline" water;
    c. Websites and advertising use fear tactics to scare consumers that their water is full of dangerous chemicals that can be filtered out;
    d. Websites and advertising include unusual and dubious recommendations;
    e. Company was brand new with no history of experience;
    f. Prices are multiple times higher than similar products that are not sold door to door.

14. Enerfuze targets unsophisticated consumers in San Antonio and pads the cost of whatever system they sell to always add up to $10,500.00. This price inflation is a predatory practice that increases the finance charge of the loan. AquaFinance and Connexus know of this gross price inflation and profit from this non-disclosed finance charge.

15. Additionally, AquaFinance engages in a deceptive lending practice whereby it titles the loans "revolving credit" but in actuality, the financing for each consumer is structured like a one-time loan of the exact amount needed to pay for the work being performed – in this case, a one-time loan of the amount charged by Apollotek or SpaceWater for the purchase and installation of the water treatment systems.

16. Because of the mislabeling of the loan as revolving credit, the consumers are not provided with the proper disclosures of interest rate and total cost as required by the Truth in Lending Act for closed-end transactions such as these financing of water treatment systems.

17. This is an additional layer of deception, a further hiding of the true cost of the water treatment systems on top of and in addition to the deceptive sales practices of Enerfuze.

18. Connexus received notice that Mr. Lopez was disputing his loan on his Transunion credit report. Despite being told that Mr. Lopez did not recognize nor agree to this loan, Connexus affirmed its accuracy.

**Enerfuze told Plaintiff Ricardo Lopez the system would be FREE but tricked him into a loan he could not afford**

19. When first approached by the Enerfuze salesperson, a man identified as Jonah Campos, Ricardo Lopez told him outright that while he would like a water softener, he knew he could not afford it. Mr. Lopez was clear from the beginning that he lived off his meager disability checks and could not pay for extras.

20. However, Mr. Campos told Mr. Lopez that he was very fortunate – Mr. Lopez lived on a corner lot that was very desirable for his advertising. If

Mr. Lopez would only put up a sign advertising Enerfuze in his front yard, Enerfuze would pay the annual cost of the water treatment system.

21. While Mr. Lopez only wanted a water softener, Mr. Campos encouraged him to get a water filter as well, telling him that it would oxygenate the water and make it healthier, especially for a diabetic like Mr. Lopez.

22. Mr. Campos performed water tests, showing Mr. Lopez how the water filter system would oxygenate the water and make it healthy and superior the same as expensive mineral water.

23. Because he did want to be healthier and the water filtration system was included with the water softener at no cost to himself, Mr. Lopez agreed to "purchase" both.

24. Mr. Campos had Mr. Lopez sign a buyer's order which stated he would receive a Puronics water filter system and water softener for a cost of $10,500.00.

25. The only other paperwork provided to Mr. Lopez was a form explaining the special home marketing deal whereby Enerfuze would pay Mr. Lopez $1500 annually – the exact cost of 12 payments on the water system – so long as Mr. Lopez allowed them to use his yard for advertising.

26. On February 25, 2019, Mr. Campos came to deliver the $1500 check to Mr. Lopez.  That same day Mr. Campos signed both the buyer's order and marketing agreement on behalf of Enerfuze.

27. However, despite February 25, 2019 being the last day Mr. Lopez received any paperwork from Mr. Campos about the initiation of his purchase, he was not provided any loan disclosures at that time or any other time.

28. At no time did Mr. Lopez visit the business premises of Enerfuze.

29. The Enerfuze salesman failed to disclose to Mr. Lopez that the water

filtration system was being paid for with a loan in Mr. Lopez's name from AquaFinance (and transferred to Connexus), and that there would be interest charges.

30. In connection with this transaction, Mr. Lopez received or signed the following documents:
    a. Booklets and warranty paperwork on the water softener and water filter, both from Puronics;
    b. Buyers order; and
    c. Home marketing agreement.
31. The papers failed to include a notice of Texas consumers' right to cancel the contract. Neither the first page nor the signature page contained a notice of the consumer's right to cancel the transaction of any kind.
32. Shortly thereafter, Aqua Finance, Inc. sent Mr. Lopez a letter stating that Mr. Lopez's loan had been sold to Connexus Credit Union and that Mr. Lopez was now a member of Connexus Credit Union. Mr. Lopez had not applied for any such credit union membership so he did not keep his Connexus paperwork, thinking it did not involve him.
33. By authorizing Aqua Finance, Inc., to originate and service business for it, Connexus entered into a principal-agent relationship with Aqua Finance, Inc.
34. Mr. Lopez's "loan" was in fact sold to Connexus.
35. Aqua Finance, Inc., "for the benefit of Connexus" sent Mr. Lopez a billing statement. This was the first time Mr. Lopez learned he had a loan, but since the payments were the amount that Enerfuze had agreed to pay, and he had the $1500 check from Enerfuze which would cover the first year, he simply set up automatic payments from the bank account containing the $1500.

36. However, at one year's time when he was expecting the second check, Mr. Lopez could not get any response from Enerfuze's phone numbers.

37. He contacted his salesperson who at first gave a different number for Enerfuze and an email address; however, when neither worked, the salesperson explained he was now working elsewhere and he did not know anything about what happened to Enerfuze. The salesperson, Mr. Campos, said he had purchased a system too and now he simply must pay for it.

38. Mr. Lopez had not contracted to pay for a loan – he had never signed a credit application nor had he received loan documents from Enerfuze or Aqua Finance or Connexus (other than the monthly statements which he paid with the Enerfuze money).

39. Mr. Lopez was forced to contact lawyers for legal assistance as he now had a large loan that he could not afford and the payments he had been promised were nowhere to be seen.

Cause of Action #1
Federal Truth in Lending Act
*Against AquaFinance, INC., Connexus Credit Union and Enerfuze LLC dba Enerfuze Water Technologies*

40. All Defendants violated the following requirements of the Truth in Lending Act and Regulation Z in the following and other respects based on their involvement in the initial financing and assignment of the loan and/or revolving credit account made the basis of these claims:

41. Defendants at all times material to Plaintiff's claims were involved in the issuance of credit to Plaintiffs.

42. Defendants, acting in concert together, failed to disclose to Plaintiff all of the "material" disclosures required by the Truth in Lending Act and

Regulation Z. Specifically, Defendants:

<u>Violations for Accounts Other than Open-End Credit Plans, 15 U.S.C. 1638</u>

 a. Failed to disclose the proper identity of the creditor required to make disclosure in violation of 15 U.S.C. § 1638(a)(1);

 b. Failed to disclose the total amount of the work that was financed in violation of 15 U.S.C. § 1638(a)(2) and Regulation Z, 12 C.F.R. 226.18(b) and the error is outside of the allowed variance, making this not a "de minimus" violation;

 c. Failed to disclose the "finance charge" in violation of 15 U.S.C. 1638(a)(3) and Regulation Z, 12 C.F.R. 226.18(d) and 226.4;

 d. Failed to disclose the finance charge expressed as an "annual percentage rate," using that term in violation of 15 U.S.C. 1638(a)(4);

 e. Failed to disclose the sum of the amount financed and the finance charge, which should have been termed "total of payments" in violation of 15 U.S.C. 1638(a)(5);

 f. Failed to disclose the "payment schedule" in violation of 15 U.S.C. 1638(a)(6) and Regulation Z, 12 C.F.R. 226.18(g);

 g. In a sale of property or services in which the seller is the creditor required to disclose pursuant to section 1631(b) of this title, failed to disclose the "total sale price", using that term, which shall be the total of the cash price of the property or services, additional charges, and the finance charge in violation of 15 U.S.C. 1638(a)(7);

 h. Failed to provide descriptive explanations of the terms "amount financed", "finance charge", "annual percentage rate", "total of payments", and "total sale price" as specified by the Bureau. The descriptive explanation of "total sale price" shall include reference

<ol>
<li style="list-style-type: none;">
to the amount of the down payment in violation of 15 U.S.C. 1638(a)(8);
</li>
<li value="9">Failed to disclose the dollar charge or percentage amount which may be imposed by a creditor solely on account of a late payment, other than a deferral or extension charge in violation of 15 U.S.C. 1638(a)(10); and</li>
<li value="10">Failed to disclose a statement that the consumer should refer to the appropriate contract document for any information such document provides about nonpayment, default, the right to accelerate the maturity of the debt, and prepayment rebates and penalties in violation of 15 U.S.C. 1638(a)(12).</li>
</ol>

<u>Violations for Open-End Credit Plans, 15 U.S.C. 1637</u>

<ol>
<li value="11">Failed to disclose the fixed annual percentage rate in connection with the extension of credit in violation of 15 U.S.C. 1637(a)(1);</li>
<li>Failed to disclose the required information concerning a variable percentage rate on credit in violation of 15 U.S.C. 1637(a)(2);</li>
<li>Failed to disclose other fees apart from interest such as annual fees or transaction fees in violation of 15 U.S.C. 1637(a)(3);</li>
<li>Failed to disclose estimate of fees which could be imposed by third parties in violation of 15 U.S.C. 1637(a)(4);</li>
<li>Failed to disclose the period during which material terms are available and are subject to change and failed to disclose the Plaintiffs' right of refusal if certain terms change, in violation of 15 U.S.C. 1637(a)(6);</li>
<li>Failed to disclose the rights of the creditor with respect to the extension of credit in violation of 15 U.S.C. 1637(a)(7);</li>
<li>Failed to disclose repayment options and minimum periodic</li>
</ol>

  payments in violation of 15 U.S.C. 1637(a)(8); and

 r. Failed to disclose an example of minimum payments and maximum repayment period based on a $10,000 outstanding balance in violation of 15 U.S.C. 1637(a)(9).

43. The violations of TILA were deliberate and done to mislead and ensnare the unsophisticated consumers into loans they could not afford for products that were grossly overpriced.

Cause of Action #2
RICO Violation – 19 U.S.C. § 1962(c)
*Against AquaFinance, INC., , Connexus Credit Union and Enerfuze LLC dba Enerfuze Water Technologies*

44. Plaintiffs adopt and reallege the allegations above.
45. Defendants willfully and intentionally conducted and participated, directly and indirectly, in a pattern of racketeering activity related to an enterprise in violation of 18 U.S.C. §1962(c).
46. Plaintiffs are "persons" within the meaning of 18 U.S.C. § 1961(3) and 1964(c)
47. Defendants AquaFinance, INC.,Connexus Credit Union and Enerfuze, LLC are "persons" within the meaning of 18 U.S.C. § 1961(3) and 1962(c).
48. Defendants AquaFinance, INC., Connexus Credit Union and Enerfuze LLC are an "enterprise" as defined in 18 U.S.C. § 1961(4) and 1962(c).
49. The affairs of each enterprise affect interstate commerce.
50. Defendants AquaFinance INC and Connexus Credit Union devised a scheme to bypass traditional lending underwriting and required Truth-in-lending disclosures by marketing loans through contractors selling directly to homeowners.  The contractors, in particular Enerfuze LLC,

were allowed loan to value ratios far in excess of market rates, creating a hidden finance charge added to the loans which were marketed to unsophisticated homeowners. Enerfuze inflated the prices of these water treatment systems in order to create more profit for themselves as well as for the lenders. Even with the check Enerfuze wrote for the first year of payments, Enerfuze still was charging $9000 for a water system that should go for half or a third that much.

51. AquaFinance designed the credit application process and did the servicing of the loans while Connexus Credit Union was the lender. Even ignoring the hidden finance charge of the inflated prices added onto the loans to make up for the lack of underwriting or background checks, neither Connexus Credit Union, AquaFinance, nor the salespeople for Enerfuze ever provided the Truth-in-Lending disclosures mandated by law for these closed-end credit loans which the servicer purposefully misnamed "revolving credit".

52. The defendants intentionally failed to disclose the facts about the true value of the water systems, the distributions of the profits from the loans, and the actual price of the water treatment systems with finance charges and interest added.

53. The practice of inflating prices and charging excess and undisclosed finance charges to credit customers is a scheme or artifice to defraud within the meaning of the mail and wire fraud statutes, 18 U.S.C. §1341 and 1343.

54. The defendants' actions had a profit-generating purpose.

55. Use of the mails and interstate wires was made in connection with the scheme, including but not limited to:

    a. Interstate wire communications were used to retrieve ("pull")

      credit reports on plaintiffs and other prospective victims of the scheme. The retrieval of credit reports was an essential part of the scheme because it was necessary in order to determine whether they were able to pay the excess finance charges and other amounts.

   b. On information and belief, the information in the applications was also transmitted via wire communications so that approval could be granted immediately and, in some cases, installation of the water treatment systems occurred the same day the Enerfuze salesman visited the consumer.

   c. The mails were used to establish the companies (file incorporation papers, file annual reports, file tax returns, secure necessary licenses, etc.) This was necessary to provide an air of legitimacy to the scheme.

   d. The mails are also used to send billing statements, collection letters, and past due notices on these fraudulently obtained debts.

56. Defendants' acts of mail and wire fraud lasted from the date of the inception of the agreements between
   a. AquaFinance and Enerfuze and
   b. AquaFinance and Connexus Credit Union

and lasted through the present.

57. Upon information and belief, the defendants' predicate acts numbered in the hundreds or more.

58. Plaintiffs' injuries as plead above were proximately caused by defendants' racketeering activities.

Cause of Action #3
Violation of the Deceptive Trade Practices Act (DTPA)

*Against Defendants Enerfuze LLC and Aquafinance and Connexus Credit Union*

59. Plaintiff incorporates all factual allegations.
60. Plaintiff is a consumer as defined by Texas Business and Commerce Code §17.45(4).
61. Enerfuze violated the DTPA when it employed a predatory course of conduct with the Plaintiffs, including:
    a. Use deceptive representations in violation of §17.46(b)(4);
    b. represent that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not, §17.46(b)(2);
    c. represent that goods have uses or benefits which they do not in violation of §17.46(b)(5);
    d. represent that goods or services are of a particular standard, quality, or grade... if they are of another, §17.46(b)(7);
    e. knowingly making false or misleading statements of fact concerning the need for parts, replacement, or repair service, §17.46(b)(13); and
    f. fail to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed, §17.46(b)(24);
62. Enerfuze made the misrepresentations knowingly, the misrepresentations were the producing cause of Plaintiffs' damages, and Plaintiffs reasonably relied on these misrepresentations to their detriment in approving the installation of the water treatment systems.
63. Under § 17.50(b), Plaintiff is entitled to and seek three times their

economic damages—including but not limited to the money paid to an outside finance company for the installation and all damage done to Plaintiff's homes and credit standing as a result of the loan Enerfuze arranged to finance the project—along with attorney's fees and court costs.

64. Economic damages in this case include the medical costs from the stress-induced medical problems experienced by multiple of the Plaintiffs.

65. The Lender Defendants are liable for the actions of Enerfuze LLC as they are the holder in due course of the loan contracts.

Cause of Action #4
Violation of the Deceptive Trade Practices Act – Cancellation of Certain Consumer Transactions
*Against all defendants*

66. Plaintiff incorporates all allegations in previous paragraphs.

67. Chapter 601 of the Texas. Business & Commerce Code applies to the transactions at issue in this suit because they meet the definition of "consumer transaction" within the chapter, and Defendants solicited a sale at a place other than their place of business. Tex. Bus. & Com. Code §§ 601.001(2), 601.002.

68. Chapter 601 is a "tie-in" statute of the Deceptive Trade Practices Act. A violation of Chapter 601 is actionable under the DTPA. Tex. Bus. & Comm. Code § 601.204.

69. Plaintiff meets the meaning of "consumer" within Section 601.001 of the Texas Business & Commerce Code.

70. Defendants meet the meaning of "merchant" within Section 601.001 of the Texas Business & Commerce Code.

71. Defendants' conduct violated Chapter 601 of the Texas Business and

Commerce Code in the following ways:

    a. failure to provide a consumer with a complete receipt or copy of a contract pertaining to the consumer transaction at the time of its execution. Tex. Bus. & Comm. Code § 601.052;

    b. failure to provide a consumer with a completed notice of cancellation in duplicate pursuant to Tex. Bus. & Comm. Code § 601.053;

    c. failure to inform a consumer orally of the consumer's right to cancel the transaction and misrepresentation of the consumer's righ to cancel. Tex. Bus. & Comm. Code § 601.152;

    d. engaged in a negotiation, transfer, sale, or assign before midnight of the fifth business day after the consumer signed the contract or purchased the goods. Tex. Bus. & Comm. Code § 601.153;

72. A sale or contract entered into under a consumer transaction without an attached duplicate notice of consumer right to cancellation is void. Tex. Bus. & Comm. Code § 601.201.

73. Plaintiff is entitled to and seek cancellation of the contracts entered into with Defendants, and three times their economic damages, along with attorney's fees and court costs.

Cause of Action #5
Fraud
*Against all Defendants*

74. Plaintiff realleges and relies on all preceding paragraphs.

75. Defendants' conduct constitutes common law fraud as:

    a. Defendants knowingly misrepresented to Plaintiff the price, value, qualifications and finance terms of the water treatment systems;

    b. Defendants intended that Plaintiff rely on those

      misrepresentations; and

    c. Plaintiff relied on those misrepresentations in deciding to enter the contract and seek financing for the water filtration systems.

76. Defendants' conduct constitutes fraud by nondisclosure as:
   a. Defendants failed to disclose facts to Plaintiff regarding the cost savings, qualifications, value and financing costs of the water filtration system;
   b. Defendants had a duty to disclose these material facts;
   c. Defendants knew Plaintiff was ignorant of the facts and Plaintiff did not have an equal opportunity to discover the facts;
   d. Defendants were deliberately silent when they had a duty to speak;
   e. By failing to disclose the facts, Defendants intended to induce Plaintiff to take some action or refrain from acting;
   f. Plaintiff relied on the defendant's nondisclosure; and
   g. Plaintiff was injured as a result of acting without that knowledge.

77. Plaintiff seeks all economic damages, all exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.008 for fraud, and court costs.

Cause of Action #6
Negligent Misrepresentation
*Against all Defendants*

78. Plaintiff realleges and relies on all preceding paragraphs.
79. Defendants' conduct constitutes negligent misrepresentation as:
   a. Defendants provided false information in the course of their business, or in a transaction in which they had a pecuniary interest;
   b. Defendants did not exercise reasonable care or competence in

        obtaining or communicating the information;

    c. Plaintiff justifiably relied on the information; and

    d. Plaintiff suffered damages proximately caused by their reliance on the false information.

80. Plaintiff seeks all actual damages and court costs.

## VII.
## TRIAL BY JURY

81. Plaintiff is entitled to and hereby demands a trial by jury.
82. Plaintiff is indigent and excused from paying the jury fees. His affidavits of indigency will be filed shortly.

## VIII.
## PRAYER

83. For these reasons, Plaintiff prays that they recover the following from Defendants:

    a. Actual damages within the jurisdictional limits of this court;
    b. Actual damages for violation of DTPA and TILA;
    c. Statutory damages for violation of the Truth in Lending Act;
    d. Treble economic under the DTPA;
    e. Cancellation of his loan contract;
    f. Attorney fees and costs;
    g. Exemplary and punitive damages where applicable;
    h. Prejudgment and postjudgment interest as allowed by law; and

//
//
//
//

i. All other relief, in law and in equity, to which Plaintiffs may be entitled.

> Respectfully submitted,
> TEXAS RIOGRANDE LEGAL AID
>
> Amy E. Clark
> State of Texas Bar Number: 24043761
> 4920 N. IH-35
> Austin, Texas 78752
> Phone: 512-374-2782
> aclark@trla.org
>
> Eva D. Sikes
> State of Texas Bar Number: 24105351
> 1206 E. Van Buren Street
> Brownsville, Texas 78520
> Phone: 956-982-5540
> esikes@trla.org
>
> *Attorneys for Plaintiffs*