IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RICARDO LOPEZ, BARBARA JEAN SAENZ, BARBARA SAENZ; AND JEANNETTE DIANA GODDARD, JEANNETTE GODDARD; | § § § § § | |
| *Plaintiffs*, | § § | 5-20-CV-00218-DAE |
| vs. | § § | |
| AQUA FINANCE,  CONNEXUS CREDIT UNION,  ENERFUZE LLC, | § § § | |
| *Defendants*. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Senior United States District Judge David A. Ezra:**

This Report and Recommendation concerns the Second Amended Motion for Default Judgment filed by Plaintiffs Ricardo Lopez, Barbara Saenz, and Jeanette Goddard. *See* Dkt. No. 32. The motion was referred for resolution pursuant to Rules CV-72 and 1 of Appendix C to the Local Rules for the United States District Court for the Western District of Texas. Plaintiffs premise federal jurisdiction on claims invoking the Truth in Lending Act ("TILA"), 18 U.S.C § 1640, and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c), and urge that supplemental jurisdiction exists with respect to their state law claims. *See* 28 U.S.C. §§ 1331, 1367. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, the Motion, Dkt. No. 32, should be **GRANTED IN PART** as to liability, as discussed further herein. Plaintiffs, however, must more fully brief the legal and

1

factual bases for their damages request. The damages issue will be set for a hearing by separate order.

### Factual and Procedural Background

Plaintiffs Lopez, Saenz, and Goddard are three individual San Antonio homeowners who contend they were tricked by a door-to-door salesperson employed by Defendant Enerfuze LLC d/b/a Enerfuze Water Technologies. The result of this trickery, Plaintiffs contend, is that they purchased water-treatment systems at their homes at an inflated price. According to their Amended Complaint, the Enerfuze salesperson performed misleading tests that showed sediment in Plaintiffs' tap water. The salesperson then promised to install, at no out-of-pocket cost to Plaintiffs, water-treatment systems that would oxygenate the water, making it healthier to consume. *See* Amend. Compl. at 1 & ¶¶ 22, 26-27, 42-43, 48-49. Although the systems themselves cost $10,400 each,[1] Enerfuze represented that it would pay Plaintiffs annually to cover the cost, provided they put up signs advertising Enerfuze in their front yards. *See id.* ¶¶ 27, 42-43, 49. Plaintiffs each agreed to "purchase" Enerfuze's water system. *See id.* ¶¶ 25, 43, 50. But the Enerfuze salesperson in each case didn't inform Plaintiffs that the "purchase" involved a loan financed by Defendants Aqua Finance, Inc. and Connexus Credit Union. *See id.* at 1; ¶ 31.

In connection with this transaction, Plaintiffs executed one or more of the following documents: (1) a Purchase & Installation Agreement in which Enerfuze agreed to install the water-treatment system and, in exchange, Plaintiffs agreed to pay Enerfuze $10,400 for "the Total Contract Price for [the] system"; (2) a "Model Home Advocate Program Disclosure" which

---

[1] There appears to be a slight discrepancy regarding the purchase price of the water-treatment system. According to Plaintiffs' live Complaint, Enerfuze charged $10,500 for the system. Later documents submitted by Plaintiffs, however, reveal that Enerfuze charged $10,400. This minor discrepancy, however, isn't material to the merits of Plaintiffs' motion.

provided that Enerfuze will directly[2] pay Plaintiffs $1,500 annually to use Plaintiffs' property as advertising for up to 60 months until the loan is paid in full; (3) a Credit Application that authorized Enerfuze to "apply for credit with third party financial companies to finance the purchase of [Enerfuze's] products and services"; and (4) a Retail Installation Credit Agreement wherein Plaintiffs agreed to finance the water system at a reduced interest rate of 9.9% with a "minimum monthly payment factor reduced to 1.2%," via a revolving line of credit with Enerfuze, which in turn assigned the debt to Aqua Finance. *See id.* ¶¶ 32, 43, 51; *see also* Dkt. Nos. 27-30.[3]

As promised, shortly after the installation, Enerfuze delivered a check to each of the Plaintiffs who in turn used the funds to pay Aqua Finance for the loan. *See* Amend. Compl. ¶ 28, 34-37, 53.[4] But Enerfuze didn't make any payments after the first check; nor did it respond to Plaintiffs' inquiries. *See id.* ¶¶ 38, 45, 53-54. Accordingly, Plaintiffs contend that they currently owe thousands of dollars on loans Defendants scammed them into purchasing. *See id.* ¶¶ 57-58.

On February 24, 2020, Plaintiffs sued Defendants Enerfuze, Aqua Finance, and Connexus Credit Union—the alleged current owner of the loans. *See* Dkt. No. 1. Plaintiffs' live Complaint raises the following claims against all three Defendants: (1) violation of the TILA, 15 U.S.C. §§ 1637-38 and its implementing regulation, the so-called "Regulation Z," 12 C.F.R. § 226 *et al.*,

---

[2] The Disclosure advised Plaintiffs that Enerfuze would not be making their monthly bank payments. Instead, Plaintiffs could "choose" how to spend the funds.

[3] Although Plaintiffs' Amended Complaint is a bit unclear regarding the exact "paperwork" they signed with Enerfuze, they later filed affidavits attaching the contracts at issue. Accordingly, the Court will exercise its discretion and consider these contracts, as well as the information in Plaintiffs' Declarations to the extent it clarifies Plaintiffs' well-pleaded allegations. *See, e.g.*, *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 499-500 (5th Cir. 2015) (permitting the use of evidentiary hearings to "prove-up" or "flesh out" the truth of plaintiff's well-pleaded claims) (citing Fed. R. Civ. P. 55(b)(2)). The Court, however, will not consider any allegations in Plaintiffs' Declarations that are absent from their live Complaint.

[4] *See also* Dkt. No. 28 ¶¶ 16-17 (clarifying that these allegations apply to all Plaintiffs and not just Lopez and Goddard).

for failure to provide numerous material disclosures for accounts other than open-ended credit plans or, alternatively, disclosures required for open-credit plans; (2) RICO violations, *see* 19 U.S.C. § 1962(c); (3) violation of the Texas Deceptive Trade Practices Act ("DTPA"), by violating the following laundry-list provisions, Tex. Bus. & Comm. Code § 17.46(b)(2), (4) (5), (7), (13), & (24), as well as the Home Solicitations Act, Tex. Bus. & Comm. Code § 601.204, a "tie-in" to the DTPA; (4) fraud; and (5) negligent misrepresentation.

As a remedy, Plaintiffs seek (1) actual damages; (2) statutory damages for violation of the TILA; (3) treble damages under the DTPA; (4) cancellation of the loan contracts; (5) attorney fees and costs; (6) exemplary damages "where applicable"; and (7) pre-judgment and post-judgment interest "as allowed by law."

Defendants haven't answered or otherwise responded to Plaintiffs' Amended Complaint as of the date of this Order. *See* Fed. R. Civ. P. 12(a)(1)(A). Accordingly, with some prompting by the District Court, *see* Dkt. No. 13 & 21, Plaintiffs sought and obtained entry of default against Defendants, and Plaintiffs thereafter moved for default judgment. *See* Dkt. Nos. 17-20, 23-24. After evaluating Plaintiffs' motion for default judgment, the Court determined that some clarification and additional briefing was required. *See* Dkt. No. 25. Accordingly, the Court ordered Plaintiffs to file an amended motion that adequately briefed the factual and legal bases entitling them to the relief sought. *See id.* Plaintiffs thereafter filed an amended motion, but it still didn't address all the Court's concerns. *See* Dkt. No. 23. Specifically, Plaintiffs failed to explain how the Assistant Vice President of Aqua Finance was authorized to accept service on behalf of Connexus. *See* Dkt. No. 31. Plaintiffs also didn't explain how the allegations in their live Complaint provided a sufficient basis to enter judgment in their favor, and they appeared to lump all three Defendants together for misconduct without sufficiently explaining how the Defendants are related and why—

with citations to relevant authority—each defendant is liable for each claim for which Plaintiffs seek a default judgment. *See id.* Finally, Plaintiffs didn't adequately brief the legal basis for their damages request against each Defendant and identify the amount requested. Accordingly, the Court ordered Plaintiffs to file an amended motion for default judgment to address these concerns. *See id.*

Plaintiffs now—via their Second Amended Motion for Default Judgment—move for default judgment against Defendants Enerfuze and Aqua Finance. *See* Dkt. No. 32. They no longer seek default judgment against Connexus. *See id.* n. 1.

## Analysis

### A.      Enerfuze and Aqua Finance Defaulted.

The record reflects Plaintiffs served a copy of the Summons and Amended Complaint on Aqua Finance's Assistant Vice President Kathryn Klosinski on May 28, 2020, and on Enerfuze's Chief Executive Officer Paul Chancey on October 5, 2020. *See* Dkt. Nos. 17 & 22. As officers of Aqua Finance and Enerfuze, Klosinski and Chancey were authorized to accept service on each respective company's behalf. *See* Fed. R. Civ. P. 4(h)(1)(B). Defendants have failed to answer or otherwise defend against Plaintiffs' claims, as demonstrated by Plaintiffs' motions for entry of default. *See* Dkt. No. 17& 22. The rules provide that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Accordingly, the Clerk properly entered default against Enerfuze and Aqua Finance.

### B.      Default Judgment Should be Granted in Part as to Liability, But More Briefing Is Needed on Damages.

Once a default has been entered, and upon a party's motion, a court may enter a default judgment. Fed. R. Civ. P. 55(b); *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).

"[A] party," however, "is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quotation marks omitted). Rather, "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975). When considering whether such a basis is presented, a court accepts as true the complaint's well-pleaded factual allegations—except regarding damages—and must determine whether those pleaded facts state a claim upon which relief may be granted. *See id.*; *see also United States ex rel. M-Co. Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987).

As discussed further below, Plaintiffs have stated claims against Defendants Enerfuze and Aqua Finance for violation of the TILA, and Plaintiffs have also stated viable DTPA claims against Enerfuze. But Plaintiffs haven't stated a viable DTPA claim against Aqua Finance. Plaintiffs also forfeited default judgment on their claims for fraud, RICO, and negligent misrepresentation

Although judgement in favor of Plaintiffs is warranted, under Texas's "one satisfaction rule" "[t]here can be but one recovery for one injury, and the fact that there may be more than one theory of liability does not modify this rule." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 303 (Tex. 2006) (quotation, and ellipses omitted). As the prevailing party, Plaintiffs are entitled to judgment under the most favorable theory of recovery. Moreover, further briefing is needed regarding damages before the Court sets this matter for a hearing.

**1.**     *Plaintiffs have each stated a viable claim against Enerfuze and Aqua Finance for violation of the TILA.* The TILA and Regulation Z impose a variety of disclosure requirements on creditors, both to protect consumers from inaccurate and unfair credit practices and "'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.'"

*James v. City Home Serv., In*c., 712 F.2d 193, 194 (5th Cir. 1983) (quoting 15 U.S.C. § 1601(a));

*see also Fairley v. Turan–Foley Imports, Inc*., 65 F.3d 475, 479 (5th Cir.1995). The Act provides

a private cause of action to any individual consumer against any creditor who fails to disclose

certain material terms associated with the extension of credit. *See* 15 U.S.C.A. § 1640(a); *Lacy v.*

*Gen. Fin. Corp*., 651 F.2d 1026, 1029 (5th Cir. 1981).

Here, Plaintiffs are consumers for purposes of the Act[5] and allege that Enerfuze is a

"creditor"[6] that provided a closed-end credit loan[7]and, in the course of doing so, failed to provide

a number of required disclosures, such as those respecting the "finance charge," the "sum of the

amount financed," the penalties for late payments, the number of payments and payment schedule,

and other material terms.[8] *See* Amend. Compl.¶¶ 62a-j (citing 15 U.S.C. §§ 1638(a)(3)-(8), (10),

(12) & 12 C.F.R. §§ 226.18(b), (d), 226.4. A review of the documents Enerfuze allegedly provided

---

[5] A person is a "consumer" under the TILA if the "party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1602(h).

[6] The TILA defines a creditor as  a "person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. § 1602(g).

[7] "A 'closed-end credit' transaction is one where the finance charge is divided into the term of the loan and incorporated into time payments." *B McAnaney v. Astoria Fin. Corp.,* No. 04-CV-1101JFBWDW, 2008 WL 222524, at *4 (E.D.N.Y. Jan. 25, 2008) (quotations omitted). "By contrast, an 'open-end' credit transaction is one in which the creditor reasonably contemplates repeated transactions, and provides for a finance charge which may be computed from time to time on the outstanding unpaid balance." *Id.* (quotations and ellipsis omitted). Accordingly, Plaintiffs' one-time purchase of a water-filtration system is a closed-end loan, and the mandatory disclosures set forth in § 1638 of the TILA apply here.

[8] Because Plaintiffs are only entitled to a single recovery for Defendants' multiple TILA violations, it isn't necessary to consider whether there is a sufficient basis in the pleadings for each claimed non-disclosure. *See Turner v. Firestone Tire & Rubber Co*., 537 F.2d 1296, 1298 (5th Cir. 1976) (citing 15 U.S.C. § 1640(g)).

Plaintiffs supports this contention. *See* 15 U.S.C. § 1632(a) ("Information required by this subchapter shall be disclosed clearly and conspicuously, in accordance with regulations of the Bureau"); 12 C.F.R. § 226.17(a)(2), (7), (b) (requiring such disclosures to be "conspicuously segregated from all other terms, data or information provided in connection with a transaction"). Accepting Plaintiffs' well-pleaded allegations as true—as clarified by their affidavits and the documents attached thereto—Plaintiffs have each stated a viable claim for violation of the TILA against Enerfuze. *See McGowan v. King, Inc*., 569 F.2d 845, 849 (5th Cir. 1978) ("The basis of [Section] 1640(a) liability is the failure to disclose information required to be disclosed; there is no requirement that the plaintiff himself be deceived in order to sue [under the Act].").

Because these violations would've been apparent from the face of the disclosure statements themselves, Aqua Finance, as the assignee of the debt, is similarly liable. *See* 15 U.S.C. § 1641(a); *McLean v. Big Dog Grp.*, LLC, No. CV 15-40-JWD-EWD, 2016 WL 3211514, at *8 (M.D. La. Mar. 11, 2016).  And, although Plaintiff Lopez concedes that he later received a billing statement with some of the necessary disclosures, *see* Amend. Compl. ¶ 37; Dkt. No. 30, this late disclosure wasn't made at the time Lopez consummated the transaction, still didn't disclose all the information required by the TILA, and wouldn't have constituted a proper "correction of error" so as to absolve Aqua Finance of liability. *See Moor v. Travelers Ins. Co*., 784 F.2d 632, 633 (5th Cir. 1986) ("Concluding a credit transaction without making the required disclosures constitutes a TILA nondisclosure violation."); 15 U.S.C. § 1640(b) (discussing how a creditor or assignee may correct a disclosure violation).

> **2.** *Plaintiffs pleaded viable DTPA claims for laundry-list violations against Enerfuze, but not against Aqua Finance*. As pertinent here, the DTPA permits consumers to recover for "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or

commerce." Tex. Bus. & Com. Code § 17.46(a). To plead a claim for a DTPA violation of the type alleged here, Plaintiffs must allege that (1) they are consumers; (2) Defendants engaged in a false, misleading, or deceptive act or practice that is either specifically enumerated in § 17.46(b) (the so-called "laundry list") or Defendants violated another DTPA tie-in provision; (3) they relied on the false, misleading, or deceptive act or practice to their detriment; and (4) the act or practice was a producing cause of their injuries. *See* Tex. Bus. & Com. Code § 17.50(a), (h); *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996).

Here, Plaintiffs are each consumers for purposes of the DTPA[9] that claim Enerfuze performed misleading water-treatment tests and falsely promised Plaintiffs greater safety and better taste if Plaintiffs "purchased" a water-treatment system at no added cost to them. *See* Amend. Compl. at 1. Specifically, Plaintiffs allege Enerfuze falsely promised to cover the cost of the systems so long as Plaintiffs permitted Enerfuze to use their yards for advertising. *See id.* ¶¶ 26-31, 40, 43, 48-49, 53, 57, 81. But Enerfuze, according to Plaintiffs, only intended to cover one such payment and further failed to disclose that the water-treatment system would be financed through a loan with Aqua Finance taken out in Plaintiffs' names. *See id.* Plaintiffs contend they relied on these misrepresentations to their detriment and that the misrepresentations were the producing cause of their damages. Accordingly, Plaintiffs each pleaded a viable claim against Enerfuze for violation of the DTPA via one or more of its laundry list provisions. *See* Tex. Bus. & Comm. Code §§17.46(b)(7), (24).[10]

---

[9] A consumer, for purposes of the DTPA, is "an individual who seeks or acquires by purchase or lease any goods or services." Tex. Bus. & Comm. Code § 17.45(4).

[10] Plaintiffs allege that aforementioned acts constitute numerous other violations of the DTPA's laundry list provisions *See* Amend. Compl. ¶¶ 81a-f; 91a-d. Because these allegedly false, misleading, or deceptive acts or practices led to only a single injury, the Court need only determine whether Plaintiffs have pled at least one viable violation of the DTPA's laundry list. *See* 27 Tex.

Plaintiffs, however, have failed to adequately plead that Aqua Finance is derivatively liable for *Enerfuze's* laundry list violations. Plaintiffs' live Complaint alleges that "[t]he Lender Defendants are liable for the actions of Enerfuze LLC as they are the holder in due course of the loan contracts." Amend. Compl. ¶ 85. But Plaintiffs have failed to explain how a holder of a note can be derivatively liable *under the DTPA* for an assignor's independent misrepresentations. In *Home Savings Association v. Guerra*, 733 S.W.2d 134, 136 (Tex. 1987), the Texas Supreme Court explained that "[t]he DTPA does not attach derivative liability to a defendant based on an innocent involvement in a business transaction." Rather, "[a]lthough a consumer suing under the DTPA need not establish contractual privity with the defendant, he must show that the defendant has committed a deceptive act which is the producing cause of the consumer's damages." *Id*. In short, "[t]o hold a creditor liable [under the DTPA] in a consumer credit transaction, the creditor must be shown to have some connection either with the actual sales transaction or with a deceptive act related to financing the transaction." *Id*. Here, however, Aqua Finance is not alleged to have had a sufficient connection to the sales transaction or to any deceptive act related to the transaction to support DTPA liability against it.

In attempting to address the Court's concerns over this issue, Plaintiffs argue for the first time in their amended motion that Enerfuze was acting as Aqua Finance's agent, and further that Aqua Finance ratified Enerfuze's misrepresentations when Aqua Finance informed Plaintiffs they would still be liable for the loan, notwithstanding Enerfuze's misconduct. *See* Dkt. No. 32 ¶¶ 13-19; 79. Such agency-principal allegations are absent from Plaintiffs' live Complaint.[11] And any

---

Prac., Consumer Rights And Remedies § 1.19 (3d ed. 2000) (discussing the "one satisfaction rule" in the context of DTPA claims).

[11] Plaintiffs only allege that Connexus entered into a principal-agent relationship with Aqua Finance. *See* Amend. Compl. ¶ 35.

allegations in Plaintiffs' Declarations that they now contend allegedly support this new theory of liability can't be considered in this posture. *See Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (to grant default judgment, "[t]here must be a sufficient basis in the pleadings for the judgment entered."). At most, Plaintiffs pleaded that Aqua Finance failed to exercise due diligence before engaging in business with Enerfuze and, further, sought to bind Plaintiffs to contracts Enerfuze assigned to Aqua Finance. *See* Amend. Compl. ¶¶ 14-15, 45, 57-58. A mere business relationship with Enerfuze is insufficient to subject Aqua Finance to liability under the DTPA. *See, e.g.*, *Qantel Bus. Sys., Inc. v. Custom Controls Co*., 761 S.W.2d 302, 305 (Tex. 1988) ("The DTPA does not recognize or envision the expansion of common law theories of vicarious liability to include 'inextricably intertwined,' or the mere existence of a 'relationship' between parties."). The fact that Aqua Finance later billed Plaintiffs pursuant to a financing agreement Enerfuze assigned to it isn't indicative of an agency relationship. Accordingly, as pleaded—and based on Plaintiffs' present briefing— Plaintiffs have failed to plead a viable DTPA claim against Aqua Finance by virtue of Enerfuze's violation of the DTPA's laundry list violations.

> **3.** *Plaintiff Goddard has pleaded a DTPA violation by virtue of Enerfuze's Home Solicitation Act Violation.* The Texas Home Solicitations Act[12] provides that a "merchant," defined as "a party to a consumer transaction other than a consumer," [13]must provide a "consumer" with a "complete receipt or copy of the contract pertaining to the consumer transaction at the time of its execution." Tex. Bus. & Comm. Code § 601.052. A "consumer" is defined as, "an individual

---

[12] The Texas Home Solicitations Act applies to the acts at issue here because the personal solicitation occurred at Plaintiffs' homes and concerned a "merchant" or its agent's offer to purchase goods or services exceeding $25. *See* Tex. Bus. & Comm. § 601.002(a) (discussing the applicability of the Act).

[13] *See* Tex. Bus. & Comm. Code § 601.001(3).

who seeks or acquires real property, money or other personal property, services, or credit for personal, family, or household purposes."[14] The contract must contain a statement in bold typeface notifying a consumer of the right to cancel the transaction at any time prior to midnight of the third business day after the transaction. This statement must be in a substantially similar form as the one set forth in § 601.052(b), and it must further attach a "completed notice of cancellation form in duplicate" in bold typeface with the language set forth in § 601.053(a)(3). Further, the Act prohibits a "merchant" from (1) "fail[ing] to inform the consumer orally of the right to cancel the transaction" at the time the consumer signs the contract; or (2) "misrepresent[ing] in any manner the consumer's right to cancel." *Id.* § 601.152. A violation of the Home Solicitation Act is considered a "false, misleading, or deceptive act or practice" under the DTPA. Tex. Bus. Comm. Code § 601.204.[15]

Here, Plaintiffs are consumers and Enerfuze is a merchant, as those terms are defined by the Home Solicitation Act. Plaintiffs contend Enerfuze violated the Act by failing to provide Lopez the three-day cancellation notice and duplicate attachment, *see* Amend. Compl. ¶ 33, and also by misrepresenting Goddard's cancellation rights, *see id.* ¶ 52. Although Plaintiffs now contend that Enerfuze also violated the Act by failing to verbally inform Saenz of her right to cancel, *see* Dkt. No. 32 ¶ 62, such allegations are absent from the live Complaint.[16] Accordingly, Saenz has failed to plead a viable DTPA tie-in claim. Lopez's tie-in claim similarly fails for failure to plead detrimental reliance, which is an essential element of a DTPA claim. *See Cruz v. Andrews*

---

[14] *See id.*(1).

[15] Plaintiffs have not pleaded that Defendants violated the Home Solicitations Act independent of their DTPA claims. *Cf.* Tex. Bus. & Comm. Code § 601.202 (discussing a merchant's liability for violating the Home Solicitations Act).

[16] It is also absent from Saenz's Declaration, contrary to Plaintiffs' contentions. *See* Dkt. No. 28.

*Restoration, Inc.*, 364 S.W.3d 817, 823 (Tex. 2012). In other words, Lopez doesn't claim that he would've cancelled the transaction had Enerfuze informed him of his rights.

Plaintiff Goddard, however, has plausibly pleaded a DTPA tie-in claim against Enerfuze. Goddard pleads that after agreeing to the installation of the water filter, she began to have concerns because she "had been scammed in the past and after rebuilding her credit, she did not want to get caught up in something that would hurt her financially." Amend. Compl. ¶ 52. Accordingly, Goddard contends that she asked Enerfuze whether she could cancel the transaction. *See id.* In response, Enerfuze misrepresented that Goddard "had no right to cancel by then and needed to just sign." *Id.* Although Goddard doesn't explicitly plead that she relied on this misrepresentation to her detriment, it is implicit in her allegations. Moreover, in her Declaration, Goddard clarifies that she "didn't try to cancel because [she] had been told that it was not allowed." Dkt. No. 27 ¶ 9.

Plaintiffs, however, again fail to explain how Aqua Finance could be liable for Enerfuze's actions in consummating the transaction. Accordingly, on this briefing, Goddard isn't entitled to default judgment against Aqua Finance for her Home Solicitation Act violation.[17]

> **4.** *Plaintiffs forfeited their RICO, fraud, and negligent misrepresentation claims.* Plaintiffs' Second Amended Motion for Default Judgment doesn't brief—let alone mention—RICO or fraud. And, although Plaintiffs discuss Enerfuze's various misrepresentations, they appear to do so in the context of briefing their DTPA claims; not claims for fraud or negligent

---

[17] Nevertheless, because a violation of the Home Solicitations Act renders a contract void and unenforceable, *see* Tex. Bus. & Comm. Code § 601.201, it appears that Aqua Finance can't enforce its contract at least against Goddard. Goddard may also be entitled to recover the funds she paid Aqua Finance under a theory of unjust enrichment, although Plaintiffs haven't pled a claim for unjust enrichment or briefed the issue. *See In re Okedokun*, 593 B.R. 469, 578 (Bankr. S.D. Tex. 2018), *subsequently aff'd and remanded sub nom*. 968 F.3d 378 (5th Cir. 2020) (discussing the split in Texas courts regarding whether unjust enrichment is an independent cause of action or instead, a theory of recovery).

misrepresentation. Accordingly, to the extent Plaintiffs seek default judgment on their claims for RICO, fraud, and negligent misrepresentation, the request should be denied as inadequately briefed; those claims are forfeited. *See United States v. Maes*, 961 F.3d 366, 377 (5th Cir. 2020), as revised (Jun. 2, 2020) (failure to adequately brief an argument renders it forfeited).

     **5.**    *Further briefing is needed regarding Plaintiffs' damages*. Having found that default judgment in part on liability is appropriate, the Court next considers damages. "As a general proposition, in the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). But the fact that Plaintiffs are seeking unliquidated damages here and have requested a hearing to present evidence on the matter doesn't excuse them from fully briefing the issue of damages.

     As the Court previously explained in its February 10, 2021 and March 31, 2021 Orders, Dkt. Nos. 26 & 31, Plaintiffs should adequately brief the legal basis for their damages request against each Defendant and identify the amount requested. This brief should *clearly* identify: (1) the theory of recovery for which each Plaintiff seek damages against each Defendant, keeping in mind Texas's one-satisfaction rule; (2) the category of damages each Plaintiff requests against each Defendant along with a citation to the relevant legal authority that permits such a recovery and a brief explanation where necessary[18]; (3) with respect to each category of damages, the amount requested against each Defendant; and (4) at minimum, the evidence Plaintiffs will be presenting to support each category of requested damages broken down by category of damages where possible.

---

[18] For example, if certain proof is required to recover the type of damages sought Plaintiffs should so specify. *See, e.g.*, O'Connor's Texas Causes of Action Ch. 41-F § 5 (2021) (discussing how a plaintiff can prove loss of credit).

Plaintiffs' amended motion fails to adequately address these deficiencies. For example, Plaintiffs again fail to provide the amount sought in damages. They also fail to clearly identify each category of damages requested against each Defendant along with the relevant legal authority that permits them to recover it. Instead, Plaintiffs begin their brief by broadly claiming "statutory, economic, and unliquidated damages" and then at other points in their brief claim to seek "actual damages" in the form of stress and mental anguish (at least for some Plaintiffs), damage to their credit, a cloud on the title to their home, and attorneys' fees. Dkt. No. 32 ¶¶ 11, 31, 70-72. But whether Plaintiffs are entitled to recover economic damages or the more generous actual damages, depends on whether or not Plaintiffs seek damages for violation of the DTPA's laundry list or instead the Home Solicitations Act tie-in provision. *Compare* Tex. Bus. & Comm. Code § 17.50(a) with § 17.50(h); *see also* Richard M. Alderman, Texas Deceptive Trade Practices Act Remedies, 15 J. Consumer & Com. L. 2, 5 (2011) (distinguishing between the damages awarded on such claims). Moreover, to recover treble damages, Plaintiffs must show that Defendants acted either knowingly or intentionally, depending on which claim Plaintiffs seek recovery. *Compare* Tex. Bus. & Comm. Code § 17.50(a) with § 17.50(h); *see also* 15 J. Consumer & Com. L. at 5. Finally, some of the types of damages sought here—such as damages to Plaintiffs' credit report and cloud on title—appear to be special damages that must be specifically pleaded under Texas law. *See Boat Superstore, Inc. v. Haner*, 877 S.W.2d 376, 379 (Tex. App.—Houston [1st Dist.] 1994, no writ). Yet Plaintiffs' live Complaint and motion are silent on this matter.

In sum, more work is needed here. As the parties seeking relief, Plaintiffs bear the burden to fully brief the precise relief requested and the legal and factual bases for it. An evidentiary hearing will not be held unless and until the matter is appropriately briefed, and the failure to fully brief this matter can result in significant consequences for Plaintiffs and their claims.

**Conclusion and Recommendation**

For the reasons discussed above, it is recommended that Plaintiffs' Second Amended Motion for Default Judgment, Dkt. No. 32, should be **GRANTED IN PART** as to liability, as discussed herein. Specifically, Plaintiffs should be awarded default judgment against Defendant Enerfuze on their claims for violation of the TILA and the DTPA's laundry list. Plaintiff Goddard should be also awarded default judgment on her claim that Enerfuze violated the DTPA by virtue of the Home Solicitations Act. Plaintiffs should also be awarded default judgment against Defendant Aqua Finance on claims for violation of the TILA. Default judgment with respect to Plaintiffs' DTPA claims against Aqua Finance, however, should be denied. Similarly, default judgment with respect to Plaintiffs' claims against Defendants Enerfuze and Aqua Finance for fraud, negligent misrepresentation, and RICO should be denied.

**IT IS ORDERED THAT** within **thirty (30) days** from the date of this Order, Plaintiffs shall file a brief that fully addresses its damages request as discussed more fully herein.

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not

consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 25th day of January, 2022.

RICHARD B.  FARRER
UNITED STATES MAGISTRATE JUDGE